## CORLEY v. THE STATE.

No. 8077. DECEMBER 9, 1930.

*R. A. McGraw,* for plaintiff in error.

*George M. Napier, attorney-general, W. Y. Atkinson, solicitor-general,* and *T. R. Gress, assistant attorney-general,* contra.

GILBERT, J. On conviction of murder, Reuben Corley was sentenced to life imprisonment. His motion for a new trial was overruled, and he excepted.

■ One ground of the motion for a new trial complains that the court erred in admitting the testimony of witness Luther Garner, who related the sayings of another witness, J. C. Corley, with reference to the wife of the deceased, to wit: "He said after he came back from the chain-gang she would powder her face and put

lipstick on her lips and curl her hair. He said he got after her twice at different times. Q. That was the old gentleman himself said he had got after Paul's wife? A. Yes." Counsel for defendant interposed: "We want to register objection to all of this testimony just testified to, as irrelevant, immaterial, and having no probative value in this case." The court ruled: "Yes, I don't see how that would be admissible, what Mr. Corley said, unless in the presence of this man." The solicitor-general stated: "I asked him if there wasn't a relationship between the defendant here and the dead man's wife, if he hadn't observed it, and he denies it." The court stated: "It may be, but not as to establish the fact." The solicitor-general stated: "Purely on the question of impeachment." After which the court ruled: "If the question is for the purpose of discrediting the witness, it may be admissible; but not as to establishing the fact, but merely to show the credit of the witness. Go ahead." And the witness Garner answered: "The first time was about two weeks before this occurred. The second time was only two or three days. The first time the old gentleman had a talk with Paul's wife was two weeks before the killing. The second time was two or three days before this happened."

Unless this evidence was material for the purpose of showing that the accused killed his brother because of a desire to possess the wife of the latter, thus showing motive, it would be irrelevant and immaterial. It fails to show any relevant fact on the part of the accused, even as hearsay. It is mere suspicion or insinuation on the part of J. C. Corley as to the daughter-in-law, for he states no act of the woman except the adornment of her person, an instinct common to the sex and in no sense derogatory to character. It was admitted for the purpose of impeaching J. P. Corley, who denied making the statement. The court, in ruling on the admissibility of the evidence as a contradictory statement previously made, expressly stated that it was not admissible to "establish a fact." That was correct; it was not admissible to prove a fact. Defendant's counsel contended at the time that it was "irrelevant, immaterial, and without probative value." The objection was good and should have been sustained. It was, in so far as the record shows, a statement previously made, immaterial to the issue. It was not relevant to the testimony of J. P. Corley or to the case, as contemplated in the Penal Code (1910), § 1052.

■ The court also erred in admitting the evidence of which complaint is made in the second ground of the amendment to the motion for a new trial. Over appropriate and timely objection that the evidence was "hearsay and not binding on this defendant," the court allowed Luther Garner, witness for the State, to testify as follows: "J. C. Corley told me Paul's wife paid attention to Reuben in place of Paul." In view of the very indefinite meaning of the statement, the wisdom of the rule against hearsay evidence is illustrated. Here the actual facts intended to be stated by Corley, if he made the statement, is left to mere conjecture. In a case like this the risk of drawing an unwarranted conclusion is too great a risk.

■ Cases may arise where a new trial would not be required because of the above ruling of the trial judge; but in this case, because of its peculiar facts, the ends of justice require another trial. One brother killed another, at the home of their father, where they both resided. There is no denial that the accused, Reuben, killed his brother Paul, by shooting him. There is no escape from the finding that Paul was drunk—so drunk that he was a menace, at the time, to his own wife and child. The only witnesses to the killing were members of the immediate family. The father and stepmother gave evidence exculpating the accused brother, which, if believed, would have entirely justified the killing. On the other hand there was evidence tending to. impeach the father, J. C. Corley, but not as to the stepmother. The only direct evidence as to the killing introduced by the prosecution was the dying declaration of the deceased, who denied that he had assaulted the accused with a knife, as claimed by the defense. The issue of fact is, of course, exclusively for the jury to determine, and their finding is set aside only because of the rulings of the court dealt with above.

*Judgment reversed. All the Justices concur.*