## 29501. HAYNES *v.* PHILLIPS.

DECIDED JULY 9, 1942.

*Clifford Hendrix, James D. Childs,* for plaintiff in error.
*John W. Bollon,* contra.

STEPHENS, P. J. T. W. Phillips brought suit against Mrs. Elizabeth Stewart Haynes for $219.15, and alleged that he had been employed by the defendant, through her husband acting as her agent, to do plaster and cement work in improving certain properties of the defendant; that he did the work in a workman-like manner; that it was accepted by the defendant after it had been completed and the defendant has failed and refused to pay. By an amendment the plaintiff attached an itemized statement showing various jobs done for the defendant with the charges made therefor, and showing various payments made by the defendant. This amendment showed an alleged balance due the plaintiff by the

defendant of $595.23. By this amendment the plaintiff struck from the original petition the figure $219.15, and inserted $595.23 as the sum sued for.

The defendant denied liability. The trial resulted in a verdict for the plaintiff for $400. The judge overruled the defendant's motion for new trial and she excepted.

■ In special grounds 1 and 2 of the motion the defendant contends that the court erred in admitting testimony of B. T. Beasley by which it was sought to impeach A. G. Haynes, the defendant's husband. Beasley testified for the plaintiff on direct examination that he knew the general reputation of Haynes for truth and veracity in the community in which he lived, which reputation was bad, and that from that reputation he would not believe Haynes on oath. On cross-examination the defendant's counsel asked the witness if he had any ill feeling towards Haynes, and the witness replied that he had a great deal of feeling against him; that he was glad to be in court and had volunteered to come; that the plaintiff's counsel had asked him if he knew any other impeaching witnesses and he had said yes, that he was pleased "to do it;" that he felt bitter toward Haynes but was not looking to get even with him; that he would like to see other people "who got gyped to get their money;" and that Haynes did not legally owe him any money but morally did. On redirect examination the plaintiff's counsel requested Beasley to tell the court and jury why he didn't have good feeling toward Haynes. The witness answered that he was a real-estate agent and that he had earned commissions in selling houses for Haynes and had to file suit to collect commissions, and had to take less than was due him, and didn't get the money he had worked for and earned. The defendant objected to this testimony as irrelevant and immaterial and as having nothing to do with the question of Haynes's character, and because it was not a compliance with the law as to the impeachment of a witness. The court overruled the objections and stated that the party seeking to impeach a witness is confined to certain statutory questions, but when on cross-examination the bars are laid down, the party seeking to impeach the witness has a right to examine the impeaching witness as to the details brought out on cross-examination. The defendant then asked the witness on recross-examination: "From what you just said, that is why you wouldn't believe this man on

his oath?" Beasley replied, "Absolutely." Thereupon counsel for the defendant moved that all of the foregoing testimony of the witness be excluded "as he said that is the reason he wouldn't believe him on oath." The court overruled the motion.

The defendant contends that the court should have sustained the objections because the plaintiff's counsel sought by the question propounded to the witness to elicit from him "evidence relating to particular transactions and the opinion of a single individual." The defendant also contends that the court should have sustained the motion to exclude all the testimony of Beasley because he was allowed, over objections, to relate particular transactions that he had had with Haynes, and definitely and positively stated that because of these transactions he would not believe him on his oath. The defendant further contends that the failure of the court to sustain her objections and the failure to exclude such testimony were highly prejudicial to her and were contrary to law.

"A witness may be impeached by evidence as to his general bad character. The impeaching witness should be first asked as to his knowledge of the general character of the witness, and next as to what that character is, and lastly he may be asked if, from that character, he would believe him on his oath. The witness may be sustained by similar proof of character. The particular transactions, or the opinions of single individuals, shall not be inquired of on either side, except upon cross-examination in seeking for the extent and foundation of the witness' knowledge." Code, § 38-1804. On direct examination of a witness for the purpose of impeaching another witness by proof of the latter's general bad character and reputation the examination must be confined to the general character of the witness, and questions as to specific acts are improper. See *Andrews* v. *State,* 118 *Ga.* 1, 3 (43 S. E. 852). "Particular transactions can not be inquired into to prove the bad character of a witness, except in cross-examination in seeking for the foundation and extent of the witness's knowledge." *Alred* v. *State,* 126 *Ga.* 537 (3) (55 S. E. 178). In the present case, on direct examination, Beasley testified that Haynes's general reputation was bad, and that he would not believe him on his oath. The defendant's counsel cross-questioned the witness, seeking to determine the extent and foundation of his knowledge, and whether he entertained ill feeling toward Haynes. The impeaching witness

stated that he did have such feeling toward Haynes, and that while Haynes did not owe him any money legally he did owe him morally.

After the defendant's counsel had interrogated Beasley as to the foundation and extent of his knowledge of the general bad character and reputation of Haynes, the court erred in not striking all of such testimony when it appeared on recross-examination that the reason Beasley would not believe Haynes on oath was that he had sold a great many houses for him, was dependent on his commissions and was hard pressed for money, and Haynes would not pay him and he had to file suit and then settle the case in order to get anything, and thus take a lot less than the amount he had worked for and earned. When Beasley thus admitted that it was for this reason that he would not believe Haynes on his oath, the defendant's counsel moved to exclude all of the testimony referred to.

The Code, § 38-1804, provides that a witness may be impeached by evidence as to his general bad character, and that he may be sustained by proof of good character, and that "the particular transactions, or the opinions of single individuals, shall not be inquired of on either side, except upon cross-examination in seeking for the extent and foundation of the witness' knowledge." It thus appears that a person's general bad character and reputation can not be proved on the opinions of single individuals. See *Alred* v. *State,* supra. When it appeared on recross-examination that Beasley did not base his testimony that he would not believe Haynes on oath on general bad character and reputation, but on the fact that he claimed Haynes had not paid him commissions for work done in selling houses, it appeared that Beasley was basing his testimony that he would not believe Haynes on oath on particular transactions and his own opinion of Haynes. This was improper testimony, and the court should have sustained the motion to exclude Beasley's statement that he would not believe Haynes on oath.

■ The defendant offered in evidence a written instrument which the defendant's husband testified was made by him in the presence of the plaintiff and which showed a balance owing to the plaintiff of $68.65. The defendant's husband further testified that this paper was made by him as the defendant's agent in the presence of the plaintiff. The defendant's husband testified as to the excluded document as follows: "This paper which you hand me

appears to be pages 199 and 200 out of a book,—the figures on page 200 represent the settlement Phillips and I had just before I went over and arranged for Mr. Tatum to settle up with all the help, and this was the figure we settled on at that time. He and I got together in my office and went over the book and this was the agreement, this was the various charges he had, and payments I had made him on these charges, and the balance left $68.65, and I just had Mr. Tatum make him a check for $69. I had this paper with me at the time I was talking with Phillips. It was in the book and he and I settled on it together. That is what we agreed on. He did not offer any protest to the calculations set out on the paper; our figures were together at that time. Pursuant to that agreement $69 was paid him by Mr. Tatum." The plaintiff's counsel objected to this instrument on the ground that it was illegal and incompetent because it had some erasures on it. The judge sustained the objection.

This writing was admissible. The defendant's husband and agent testified that he prepared the figures and submitted them to the plaintiff who made no objection thereto. This witness testified that it appeared from this paper that the plaintiff was due something over $68, and it appeared from the evidence that $69 was paid to the plaintiff. It is claimed by the defendant that this was paid in full, and that this $69 was the balance shown as due by this writing. The plaintiff executed a receipt for $69, which was in evidence. This receipt recites that it is in full of all services for a certain job. The plaintiff testified that this $69 was not a payment in full of all that the defendant was due, but only on a particular job. The jury were entitled to pass on this writing which the defendant's husband testified showed the correct balance of all that was due the plaintiff, and which he testified was acquiesced in by, or made in the presence of, the plaintiff. This writing did not fall within the rule of private memoranda, kept by a party in his own interest alone. The jury would have been authorized to find that the paper represented a striking of a balance between the parties, and also to find that the balance shown had been paid to and received by the plaintiff. The fact that the paper contained erasures or deletions or marks would not necessarily render it inadmissible. Such erasures could be explained, and their presence was a matter going to the probative value of the paper

rather than to its admissibility. Besides, it did not appear that the erasures were made after the time testified to by the defendant's husband that the settlement with the plaintiff was had. This paper was admissible as an admission by the plaintiff as to the correctness of the amount of the indebtedness contended for by the defendant. It follows that this paper should have been admitted for what it was worth, and that the court erred in excluding it. This error was prejudicial to the defendant.

It appeared that the defendant was engaged in constructing dwelling-houses, and that the plaintiff was employed to do plastering work on a large number of houses constructed by the defendant, through her husband as her agent. The owners of a number of houses so constructed and on which the plastering work was done by the plaintiff, after the houses were completed, placed loans thereon with the Southern Federal Savings & Loan Association of Atlanta. The defendant offered in evidence a number of statements or receipts signed by the owners of the houses, each acknowledging receipt of a certain sum of money from the association as a loan on the property. The judge, on objection by the plaintiff, excluded these statements as irrelevant and immaterial. In ground 4 of the motion for new trial the defendant assigns error on the refusal of the court to admit these writings. It is contended that these statements were relevant to show the incorrectness of the plaintiff's claim, in that it appeared from the itemized statement of the account sued on, which was attached to the petition, that the plaintiff was claiming that the defendant was due him for work done on certain of the houses represented by the loan statements as having been done a considerable time after the loans on the respective houses were closed. It is contended that the evidence shows that the work was done by the plaintiff on these houses before the loans were obtained. The defendant introduced a receipt signed by the plaintiff under date of April 13, 1940, for $12.75 balance which the defendant claims was in full settlement on the Hurst house and for all work on Pleasant Home Sites, the name of the subdivision in which the work was done for which the plaintiff brings this suit. On the other hand, the plaintiff claims that this receipt was for work on a particular house. It is insisted by the defendant that these written loan statements were admissible to show the difference in the dates when the work on certain of the

houses was done and the dates on which the plaintiff alleged in the bill of particulars that the work on such houses was done. The court should have permitted the defendant to introduce these loan statements. Under the evidence introduced these writings were admissible as circumstances tending to show the difference between the dates contained in the bill of particulars attached to the petition and the dates on these writings, representing the dates on which the loans on the particular houses were closed and the money paid. The court erred in excluding these documents.

It follows from the rulings in divisions 2 and 3 of this opinion that the court erred in overruling the motion for new trial.

*Judgment reversed. Sutton and Felton, JJ., concur.*